UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| AMMIANUS POMPILIUS,<br><br>    Plaintiff,<br><br>  v.<br><br>STATE OF NEVADA *ex rel* NEVADA DEPARTMENT OF CORRECTIONS, *et al*,<br><br>    Defendants. | Case No. 2:21-cv-01331-RFB-DJA<br><br>**ORDER** |

**I.     INTRODUCTION**

Before the Court are Defendants' Motion for Summary Judgment (ECF No. 55) and Motion for Leave to File Plaintiff's Medical Records Under Seal (ECF No. 56). For the reasons stated herein, the motions are granted.

**II.    PROCEDURAL HISTORY**

Plaintiff filed his complaint in state court on September 22, 2020. ECF No. 2 at 7. This case was then removed on July 14, 2021. ECF No. 1. On February 7, 2022, Plaintiff filed a Motion for Preliminary Injunction and a Motion for Leave to File Second Amended Complaint. ECF Nos. 8, 9. Plaintiff filed the Second Amended Complaint ("SAC") on February 16, 2022. ECF Nos. 11. On March 1, 2022, Plaintiff filed a "Motion for Order Granting Plaintiff's Emergency Motion for Preliminary Injunction." ECF No. 13. On March 7, 2022, Defendants filed Plaintiff's complete medical records under seal and responded to the Motion for Preliminary Injunction. ECF Nos. 14, 17. On March 15, 2022, Defendants filed a Motion to Screen Second Amended Complaint. ECF No. 19.

On June 7, 2022, the Court screened the SAC. See ECF Nos. 33, 39. It allowed the following claims to proceed: Count One - First Amendment free exercise, Nevada Constitution, Religious Land Use and Institutionalized Persons Act ("RLUIPA") against Defendants Julio Calderin, Brian Williams, and Calvin Johnson; Count Two - General negligence against Defendants Calderin, Johnson, and Williams, and negligent training, supervision, and retention against Defendants James Dzurenda, Williams, and Johnson; Count Three - Eighth Amendment deliberate indifference (knee pain) against Drs. Bryan and Wulff; Count Four - Professional negligence against Drs. Bryan and Wulff; Count Five - Eighth Amendment deliberate indifference (hip pain/arthritis) against Drs. Bryan, Wulff, and unnamed Nevada Department of Corrections ("NDOC") medical staff; Count Six - Negligence against Drs. Bryan and Wulff (consolidated with Count Four). Id. It, however, dismissed the following claims: Count Two – Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress; Count Four negligence against High Desert State Prison ("HDPS") medical and the NDOC; and Count Five - Negligence against HDSP medical and the NDOC. Id.

The Court granted in part and deferred in part Plaintiff's Motion for Preliminary Injunction. ECF No. 33. Defendants were ordered to arrange for Plaintiff to see HDSP's general practitioner for his hip and knee pain by June 17, 2022, and to arrange for Plaintiff to be seen by orthopedic specialist Dr. Wulff at the next visit Dr. Wulff makes to the facility. The motion was deferred insofar as Plaintiff requested the Court to order surgery or any particular course of medical treatment at the time.

Defendants accepted service on August 8, 2022. ECF No. 40, 54. An Answer was filed September 19, 2022. ECF No. 48. Discovery closed on December 28, 2022. ECF No. 49.

On January 25, 2023, Defendants filed the instant Motion for Summary Judgment. ECF No. 55.[1] To date, Plaintiff has neither responded to the motion nor requested any extension of time to respond to the motion.

---

[1] Defendants also filed the instant, accompanying Motion for Leave to File Plaintiff's Medical Records Under Seal. ECF No. 56. The Court grants this motion. See Hill v. Baker, No. 3:11-CV-00717, 2014 WL 177413, at *4 (D. Nev. Jan. 13, 2014) (explaining that medical privacy has qualified as a compelling reason for sealing records); see also Kamakana v. City of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006).

This Order follows.

### III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing a matter determines which facts are material to a case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). The nonmoving party may not merely rest on the allegations of her pleadings; rather, she must produce specific facts—by affidavit or other evidence—showing a genuine issue of fact. Anderson, 477 U.S. at 256.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or (4) issue any other appropriate order." Heinemann v. Satterberg, 731 F.3d 914, 915 (9th Cir. 2013) (citing Fed. R. Civ. P. 56(e)). When a party fails to oppose a motion for summary judgment, district courts must assess "whether the motion and supporting materials entitle the movant to summary judgment." Id. (citations and internal quotation marks omitted).

///

## IV. FACTUAL BACKGROUND

Plaintiff did not respond to the Motion for Summary Judgment or otherwise provide the Court with any filings from which the Court is able to determine Plaintiff's position on the factual background of this case. The Court accordingly accepts the following facts as undisputed, based on Defendants' Motion for Summary Judgment (ECF No. 55) and other supporting materials in the record.

Plaintiff is currently incarcerated within the NDOC. At all relevant times, Plaintiff was housed at HDSP. From January 8, 2018 to October 8, 2020, Plaintiff filed eleven grievances concerning his practice of religion, while incarnated with the NDOC. Beginning January 8, 2018, Plaintiff filed a grievance claiming that he was denied chapel services "on Friday" because custody staff did not receive a list that would allow him to go to services. Plaintiff alleged that names were regularly removed from the Thelema chapel list (more than just himself), but he did not allege this was done by Defendant Calderin, and it predates December 2018. The next grievance, filed January 17, 2018, claimed that the NDOC was not properly recognizing Thelema religious holidays.

Next, on April 13, 2018, Plaintiff complained that the chaplain or administration had an ongoing campaign against Thelemites to deny them rooms in the chapel. In this grievance, Plaintiff acknowledges being allowed to attend chapel services; his complaint was that Thelemite services were required to be held outdoors. In his subsequent dated April 28, 2018 grievance, he contested the denial of chapel rooms to Thelemites because he claimed that Thelema is not a nature-based religion. This grievance acknowledges that Plaintiff was provided access to outdoor grounds for religious services. On April 29, 2018, Plaintiff filed his first grievance seeking to have access to

4

the common fare diet based on his religion.

Thereafter, Plaintiff filed a grievance on May 5, 2018 because he received an unauthorized mail slip for herbs that the chaplain told him he could order. He then grieved the Religious Review Team's denial of Qayinism being accepted by the NDOC as a standalone religion. Next, he filed a second grievance on February 26, 2020, concerning the denial of his common fare diet for Plaintiff, based on his religious beliefs.

On March 8, 2020, Plaintiff filed a separate grievance contesting the NDOC's denial of Qayinism as a standalone religion from Thelema. In this grievance, Plaintiff makes reference to being allowed to return to the chapel on January 31, 2020; absent, however, was any claim that he was denied access to the chapel for 13 months beginning in December of 2018. He also requested that Defendant Calderin be fired for his continued antagonistic behavior toward Qayinite inmates. There is, however, no claim that Defendant Calderin should be terminated pursuant to Administrative Regulation ("AR") 339 because of the results in an earlier case.

On May 24, 2020, Plaintiff filed a grievance concerning his request for authorization to purchase yoga mats as part of a legal settlement agreement. Finally, on October 8, 2020, Plaintiff filed a grievance claiming that he was being denied access to the chapel while Jewish inmates and others were granted access. This claim appears to revolve around Covid-19 restrictions. It does not allege that Calderin prohibited Plaintiff from attending religious services beginning in December 2018, for a period of 13 months.

Separately, Plaintiff claims to have injured his knee in or about 2018. He was initially seen by Defendant Dr. Bryan on August 27, 2018. Dr. Bryan examined Plaintiff's left knee, had x-rays taken, ordered a knee brace, and arch support. They were provided to Plaintiff that same day. The doctor also prescribed 600mg ibuprofen. The medication was provided to Plaintiff on August 31,

2018, and was refilled on September 21, 2018. Plaintiff was seen by Dr. Bryan again on November 6, 2018, was referred to the orthopedic clinic, and prescribed 500mg naproxen. He received the medication on November 10, 2018, and a refill on December 15, 2018.

Defendant Dr. Wulff saw Plaintiff on December 14, 2018. The doctor performed an examination of his left knee, reviewed the x-ray results, and recommended an MRI. The MRI was approved on December 18, 2018, and initially scheduled for March 28, 2019. The MRI had to be rescheduled two different times, and the imaging was performed on May 18, 2019. After the MRI was complete, Plaintiff was seen by Dr. Wulff at the orthopedic clinic for a follow-up on June 26, 2019. Dr. Wulff wanted to review the MRI images before making a diagnosis, thus the doctor recommended additional pain medications and a follow-up appointment. The NDOC followed the recommendation, and Plaintiff received additional pain medication on June 29, 2019, with a refill provided on August 30, 2019.

After personally reviewing the MRI results, Dr. Wulff determined surgery was not necessary and relayed this to Plaintiff on July 24, 2019. The recommendation was a follow-up appointment to discuss a cortisone injection in the knee, which Dr. Bryan followed.

On September 9, 2019, Dr. Wulff saw Plaintiff at the orthopedic clinic once again. The diagnosis of the injury was mild osteo arthritis. Plaintiff was given an injection in his knee, and the recommendation was for a return in three months to review the efficacy of the injection. This recommendation was followed, and Plaintiff was scheduled for the orthopedic clinic follow-up in three months. Another refill of pain medications was provided to Plaintiff on October 2, 2019.

On December 11, 2019, Dr. Wulff saw Plaintiff. The doctor performed an examination of his knee, confirmed his diagnosis of mild osteo arthritis, and recommended a return appointment after the NDOC obtained a celestone steroid injection to try in the knee as an alternative, with

further pain medications to Plaintiff. Dr. Bryan followed the recommendation, and scheduled Plaintiff for the orthopedic clinic in three months, along with changing his pain medication prescription. Plaintiff received additional pain medication on January 18, 2020. This medication was refilled on February 15, 2020.

Dr. Bryan saw Plaintiff regarding his complaints of hip pain on March 9, 2020. The doctor called for x-rays of his hips, changed his pain medications, and referred him to the orthopedic clinic on March 18, 2020. X-rays of the pelvis and hips came back negative. The referral to the orthopedic clinic was approved on March 12, 2020. Plaintiff's orthopedic clinic appointment was cancelled, however, because of the March 2020 Covid-19 related shutdowns. He was eventually able to see Dr. Wulff about his hip pain at the orthopedic clinic on June 17, 2020, where an examination was done on his left knee and hips. Dr. Wulff reviewed the x-rays, confirmed his diagnosis of mild osteo arthritis in the knee, and diagnosed bursitis in the left hip. The recommendation was for further injections into the knee and hip, instruction to Plaintiff on IT band muscle stretching, and a follow up appointment in three months. The recommendations were authorized, and Plaintiff was scheduled for the September orthopedic clinic.

On September 16, 2020, Plaintiff was seen again by Dr. Wulff. After a physical examination, Dr. Wulff confirmed the diagnoses. He recommended resumption of ibuprofen with no injections that day, reinforced the need for IT band muscle stretching, and with any follow-up appointment "prn," meaning pro re nata or as the situation demands. The NDOC again followed the recommendation, with a new prescription for ibuprofen being ordered. This prescription was refilled on or around October 4, 2020, and again on November 7, 2020.

///

///

## V. DISCUSSION

For the reasons discussed below, the Court grants summary judgment in Defendants' favor on all Plaintiff's Counts.

### a. Count One against Defendants Calderin, Williams, and Johnson

The United States Supreme Court has held that inmates retain protections afforded by the First Amendment "including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). To raise a viable claim under the Free Exercise Clause, a prisoner must initially make a showing that the defendant has substantially burdened a sincerely held religious belief. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008).

Here, the Court finds, based on the undisputed facts, that Plaintiff cannot establish that Defendants substantially burdened practice of his religion. A review of the record, including Plaintiff's grievances, shows that Defendants did not substantially burden Plaintiff's ability to practice his religion, including by attending chapel services.

Similarly, the RLUIPA, which governs religious exercise by institutionalized persons, provides in relevant part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person–(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA claims are limited to injunctive relief. Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015).

Based on the undisputed facts, Plaintiff alleges he was denied access to the chapel for 13 months, beginning in December of 2018. Presumably then his claim would have been resolved after January 2020. Plaintiff does not appear to be asserting that he is currently being denied chapel access. As stated above, RLUIPA claims are limited to injunctive relief. Accordingly, Plaintiff's RLUIPA claim fails as a result.

Because there are no genuine issues of material fact, and Plaintiff cannot establish a

claim under either the First Amendment and Nevada analogues and the RLUIPA based on the undisputed facts in the record, the Court grants Defendants' Motion for Summary Judgment against Plaintiff's claims under Count One.

### b. Count Two: General Negligence against Defendants Calderin, Johnson, and Williams and Negligent Training, Supervision, and Retention against Defendants Dzurenda, Williams, and Johnson

To state a claim for negligence, the plaintiff must show: 1) the defendant owed the plaintiff a duty of care; 2) the defendant breached that duty; 3) the breach was the legal cause of the plaintiff's injury; and 4) the plaintiff suffered damages.

Plaintiff's negligence claim asserts that Defendants acted negligently when they burdened his ability to practice his religion. The Court incorporates by reference its analysis above of Count One to this instant Count. In turn, it finds that there are no genuine issues of material fact, and based upon the undisputed facts in the record, Plaintiff cannot establish that Defendants' actions breached any duty owed to him.

Separately, Plaintiff contends that Defendants acted negligently training, supervising, and retaining Defendant Calderin by failing to dismiss or sanction him pursuant to AR 339 after he was found to have lied on a grievance response involving religious practices in a previous case. To state a claim for negligent training, supervision, and retention claim, the plaintiff must show: (1) a general duty on the employer to use reasonable care in the training, supervision, and retention of employees to ensure that they are fit for their positions, (2) breach, (3) injury, and (4) causation. Hall v. SSF, Inc., 930 P.2d 94, 98 (Nev. 1996).

Once more, the Court incorporates by reference its Count One analysis to this instant Count. In doing so, it finds that there are no genuine issues of material fact, and based upon the undisputed facts in the record, Plaintiff cannot establish that Defendants' actions breached any

duty owed to him.

Therefore, the Court grants Defendants' Motion for Summary Judgment against Plaintiff's claims under Count Two.

### c. Count Three and Count Five against Drs. Bryan, Wulff, and unnamed NDOC medical staff

Count Three and Count Five are brought pursuant to the Eighth Amendment for deliberate indifference to his serious medical needs. These Counts arise from his efforts to get medical treatment for his knee and hip pains and arthritis. A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012). To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (internal quotations omitted).

The Court finds, based on the undisputed facts, that Plaintiff cannot establish that Defendants were deliberately indifferent to his medical needs. Indeed, Plaintiff has been diagnosed

with serious medical needs, including mild osteo arthritis in his left knee and trochanteric bursitis in his left hip. That said, Plaintiff cannot establish that Defendants knew of or disregarded an excessive risk to Plaintiff's health denying him the necessary treatment, including medication. There is nothing in the record, for instance, to suggest that Dr. Bryan was aware of any claims that Plaintiff was going without pain medications. Nor is there anything that suggests that Dr. Wulff was aware of any delay in Plaintiff first being seen for his left knee pain or that Dr. Wulff was aware of any alleged delay in Plaintiff receiving pain medications. Further, Plaintiff has also not established any facts that Defendants recommended, and approved, treatment were medically unacceptable under the circumstances, or that any unnamed NDOC medical staff failed to follow them.

Because there are no genuine issues of material fact, and Plaintiff cannot establish a claim under the Eighth Amendment based upon the undisputed facts in the record, the Court grants Defendants' Motion for Summary Judgment against Plaintiff's claims under Count Three and Count Five.

### d. Count Four and Count Six against Drs. Bryan and Wulff

As a preliminary matter, the Court addresses Defendants' contention that these Counts fail because Plaintiff failed to include an affidavit from a medical expert supporting these Counts pursuant to Nevada Revised Statute 41A.071(1). The Court disagrees. Where state law claims are brought in federal court based on diversity jurisdiction or pursuant to supplemental jurisdiction, the Court must determine whether to apply state or federal substantive law. See, e.g., Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 534 (9th Cir. 2011). Moreover, it is well established that diversity jurisdiction-based cases pursued in federal court are subject to federal, not state, procedure. Under Nevada law, a malpractice complaint filed without the affidavit is a legal nullity

11

and thus may not be amended. Washoe Med. Ctr. v. Second Judicial Dist. Court, 148 P.3d 790, 795 (Nev. 2006). The Court finds, however, that the Nevada Supreme Court's determination in Washoe Medical Center is a procedural and not a substantive determination. See Zohar v. Zbiegien, 334 P.3d 402, 406 (Nev. 2014) ("[T]he NRS 41A.071 affidavit requirement is a preliminary procedural rule subject to the notice-pleading standard, and thus, it must be liberally construe[d] ... in a manner that is consistent with our NRCP 12 jurisprudence."). Thus, the Court's instant analysis does not have to defer to such a requirement as Defendants appear to contend. See Las Vegas Sands, LLC, 632 F.3d at 534.

"Professional negligence" is defined as "the failure of a provider of healthcare, in rendering services, to use the reasonable care, skill or knowledge ordinarily used under similar circumstances by similarly trained and experienced providers of health care." Nev. Rev. Stat. § 41A.015. "Allegations of breach of duty involving medical judgment, diagnosis, or treatment indicate that a claim is for medical malpractice." Szymborski v. Spring Mtn. Treatment Ctr., 403 P.3d 1280, 1284 (Nev. 2017). The Court incorporates by reference the applicable law from Count Two's general negligence analysis to this instant Count.

Ultimately, the Court finds that there are no genuine issues of material fact, and Plaintiff cannot establish either a professional negligence or general negligence claim based on the undisputed facts in the record. The Court incorporates by reference its Counts Three and Five analysis to this Count and concludes that Defendants did not act negligently when they provided Plaintiff with medical treatment for his various medical conditions. Therefore, the Court grants Defendants' Motion for Summary Judgment against Plaintiff's claims under Count Four and Count Six.

///

///

## VI.   CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 55) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Plaintiff's Medical Records Under Seal (ECF No. 56) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff shall have thirty days from the date of the entry of this Order to file a Motion for Reconsideration of the Court's Order. The motion should explain why Plaintiff failed to timely respond to Defendants' Motion for Summary Judgment. If Plaintiff fails to file such motion within thirty days, the Clerk of the Court is instructed to enter judgment and close this case accordingly.

**DATED:** September 30, 2023

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**